IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

WILLIAM DEAN PHILLIPS, JR.,    )
         )
       Petitioner,    )
         )
         )     CIV-08-1248-M
v.         )
         )
GREG WILLIAMS, Warden,    )
         )
       Respondent.    )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the conviction for Murder in the First Degree entered against him in the District Court of Oklahoma County, Case No. CF-03-3131, for which Petitioner was sentenced to a term of life imprisonment without parole. Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's jury trial (hereinafter "TR__") and the original district court record (hereinafter "OR__"). Petitioner has filed a reply designated an "Objection to State Response to Habeas Corpus." Consistent with 28 U.S.C.§636(b)(1)(B), the matter has been referred to the undersigned Magistrate Judge for initial proceedings. For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner was charged by information filed June 9, 2003, in the District Court of

1

Oklahoma County, Case No. CF-2003-3131, with the crime of Murder in the First Degree.

The information alleged that Petitioner killed his girlfriend, Dashia Dean, by shooting her

with a gun on June 2, 2003.[1]  OR 5.  The prosecution agreed not to seek the death penalty in

return for an agreement to continue the date of the jury trial.  OR 108.

In a two-day jury trial conducted on August 30-31, 2005, Petitioner was found guilty

of the offense of Murder in the First Degree, and the jury recommended a sentence of life

imprisonment without parole.  OR 155.  Petitioner was sentenced on September 7, 2005, to

a term of imprisonment for life without parole.  OR 188, 209-210.  In Petitioner's direct

appeal, the Oklahoma Court of Criminal Appeals ("OCCA") entered extensive findings of

fact in an unpublished opinion. Petition, att. 1.  According to these factual findings,

> On June 2, 2003, two 9 mm bullets tore through the skull
> of Dashia Dean and ended her life.  Dashia Dean shared a
> Persimmon Square apartment in Oklahoma City with
> [Petitioner], who was her common law husband, and their two
> children.  The apartment complex is a gated community.  Dashia
> had left [Petitioner] on more than one occasion over his jealous
> and possessive behavior.  [Petitioner] and Dashia fought
> frequently.  Misty Pryor, a next door neighbor who didn't know
> the couple all that well, told a 911 operator she heard yelling and
> furniture being disturbed regularly.  An apartment security guard
> also witnessed arguments between Dean and Phillips.  Ms. Pryor
> was watching television and preparing dinner in her apartment
> next door on June 2, 2003.  She testified she heard loud arguing
> from the upstairs area of the Dean-Phillips apartment.
> Ms. Pryor told a 911 operator she "heard a loud
> something or other muffled and then ... two very, very loud pops

---

[1]Petitioner was also charged with having committed the offense after three prior
felony convictions.  OR 8.  However, the habitual offender portion of the charge was not
submitted to the jury.

that, it sounded like guns ... sounds like a car backfiring, just right up against [Pryor's] wall." Ms. Pryor looked outside and saw a man walk out of the Dean-Phillips apartment. He was walking slowly, "shaking his head to the left and to the right very slowly." The man turned around and went back to the door, then walked to a "two-door, black shiny sports car." At trial, Pryor identified [Petitioner] as the man she saw.

After hearing the gunshots, Ms. Pryor called her boyfriend, Phillip, who came to the apartments and knocked on Dean's door. No one answered. Pryor then called 911 and summoned police. Sgt. Marvin Smith responded, met with Ms. Pryor, and knocked on Dean's door. When no one answered, he entered the apartment through the unlocked door. He cleared the ground floor and was approaching the stairwell when he noticed a light sconce dislodged from the stairway wall, hanging by its wires. During his search of the upstairs, Sgt. Smith found Dashia Dean's lifeless body, still warm, on the floor of an upstairs bedroom. Copious amounts of blood stained the bedding and carpet. Emergency personnel confirmed her death at the scene.

Detectives secured a warrant for further search of the residence. They seized evidence that [Petitioner] lived in the apartment, including receipts and a plane ticket issued in his name. Officers recovered two spent rounds of 9 mm ammunition on the bed, the same brand as a partial box of live 9 mm rounds found in an upstairs vanity. Ballistics comparison showed the two rounds were fired from the same weapon. Police saw no evidence of a break-in or theft of property from the apartment.

[Petitioner's] cousin, Nicole Walker, testified [Petitioner] left his two young sons with her that day. Ms. Walker recalled [Petitioner] wearing jeans and saw no blood on him. He gave her diaper money and said he was on his way to California with a friend to do a video shoot ([Petitioner] was nominally in the music business). Ms. Walker described the car he was in that day as a medium-sized silver or grey car. She tried unsuccessfully to contact [Petitioner] that night or the following day. Dashia Dean's sister later picked up the children.

Three days after the homicide, police recovered [Petitioner's] black Cadillac Catera in Akron, Ohio. [Petitioner], and the pistol that witnesses had seen him carry, were missing.

3

>Ten months after the shootings, an attentive hotel employee and a police officer in a suburb of Seattle, Washington, recognized [Petitioner] from his profile on a recent episode of *America's Most Wanted*. The officer confirmed his hunch by checking [Petitioner's] distinctive tattoos. [Petitioner] gave a false name as he was placed under arrest. His pistol has never been found.
>
>The State's remaining evidence constructs a motive for murder around [Petitioner's] possessive love for Dashia Dean and her stated plans to separate from him for good. Joanne Dean, Dashia's mother, told the jury [Petitioner] loved Dashia and provided for the family well over their relationship, but indulged a fanatical jealousy. Dashia had left [Petitioner] for short periods in the past, but would return when lavished with gifts and affection. Joanne Dean testified she knew [Petitioner] owned a gun.
>
>Raven Barnes, Dashia's best friend, testified the Dean-Phillips relationship was good "a lot of times," but that Dashia was weary of [Petitioner's] jealousy and was planning to leave him. Ms. Barnes also remembered seeing [Petitioner] carry a gun. Tawanna Holland, Dashia's sister, testified that the couple loved each other, but in the days before her death, Dashia left Ms. Holland with the impression that she was leaving [Petitioner] for good. [Petitioner] did not testify.

Response, Ex. 3 (<u>Phillips v. Oklahoma</u>, Case No. F-2005-871 (Okla. Crim. App. Mar. 7, 2007)(unpublished op.)), at 1-4.

In Petitioner's appeal, the OCCA rejected Petitioner's claims of errors concerning jury instructions, errors in the admission of evidence, and prosecutorial misconduct. The OCCA also rejected Petitioner's claim that the trial court erred in failing to instruct the jury that he was required to serve 85 % of his sentence for a murder conviction before becoming eligible for parole, as required by Okla. Stat. tit. 21, § 13.1 (2003), and that cumulative errors warranted reversal of the conviction or modification of his sentence.

Petitioner subsequently filed an application for post-conviction relief in the district

court.   In this application, Petitioner asserted that he was denied effective assistance of appellate counsel due to appellate counsel's failure to assert a claim of ineffective assistance of trial counsel. Response, Ex. 4.   The application was denied, and the OCCA affirmed the denial of post-conviction relief. Response, Ex. 5.   In the appellate court's decision, the OCCA found that Petitioner had not demonstrated he was denied constitutionally effective assistance of appellate counsel.

In his Amended Petition filed on March 31, 2009, Petitioner raises the following grounds for habeas relief: (1) the trial court committed fundamental error by giving jury instructions that were contradictory and confusing regarding the elements of the offense of first degree malice aforethought murder; (2) the trial court committed reversible error and violated Petitioner's due process right to a fair trial by refusing to give a jury instruction on manslaughter in the first degree; (3) the trial court omitted a portion of Oklahoma's model criminal jury instructions on the issue of flight and thereby violated Petitioner's right to a "presumption of innocence by instructing the jury on [Petitioner's] flight as substantive evidence of guilt," which resulted in a fundamentally unfair trial and violated Petitioner's Fifth, Eighth, and Fourteenth Amendment rights; (4) the trial court violated Petitioner's due process right to a fair trial by failing to instruct the jury on its cautionary use of eyewitness identification; (5) the trial court erred in allowing the admission of "impermissible" victim impact evidence and "inflammatory" prosecutorial comments; (6) the trial court erred by not instructing the jury that Petitioner would be required to serve 85 % of his sentence for a murder conviction before becoming eligible for parole; (7) cumulative "[t]rial errors and

prosecutorial misconduct denied [P]etitioner due process," and (8) Petitioner was denied

effective assistance of appellate counsel because his appellate counsel failed to assert a claim

of ineffective assistance of trial counsel in his direct appeal.   In answer to the Amended

Petition, Respondent asserts that Petitioner has not shown he is entitled to habeas relief.

II. Standard of Review

      Petitioner's claims in grounds one through seven were denied by the OCCA on their

merits in his direct appeal, and the standard for reviewing these claims is governed by the

Antiterrorism and Effective Death Penalty Act ("AEDPA").   Under this standard, habeas

relief may be awarded if the state appellate court's ruling was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States." 28 U.S.C. § 2254(d)(1).  In evaluating habeas petitions under the

AEDPA, federal courts must apply a "level of 'deference to the determinations of state

courts,' provided those determinations did not conflict with federal law or apply federal law

in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf.

Rep. No. 104-518, p. 111 (1996)).  If there is no clearly established federal law in Supreme

Court cases involving facts that are closely-related or similar to those in the case being

reviewed, the court need not assess whether the state court's holding was "contrary to" or an

"unreasonable application" of established federal law.  House v. Hatch, 527 F.3d 1010, 1016-

1017 (10th Cir. 2008)(interpreting Carey v. Musladin, 549 U.S. 70 (2006)), cert. denied, __

U.S. __, 129 S. Ct. 1345 (2009).  Where the Supreme Court's "cases give no clear answer

to the question presented, ...., it cannot be said that the state court 'unreasonabl[y] appli[ed]

clearly established Federal law," and habeas "relief is unauthorized" under the explicit language of 28 U.S.C. § 2254(d)(1). <u>Wright v. Van Patten</u>, 552 U.S. 120, 128 S. Ct. 743, 747 (2008)(internal quotation and citation omitted).

If "the threshold question as to the existence of clearly established federal law" is answered affirmatively, then the reviewing court must determine whether the state court decision is either contrary to or an unreasonable application of that law. <u>House</u>, 527 F. 3d at 1010, 1018. A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 405-406, 413.

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams</u>, 529 U.S. at 407. <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640-641 (2003).  With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)(*per curiam*).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." <u>Holland v. Jackson</u>,  542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted).

7

As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In this regard, AEDPA mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

With respect to Petitioner's claim of ineffective assistance of appellate counsel raised in ground eight of the Amended Petition, the OCCA denied Petitioner's claim that he received constitutionally ineffective assistance of appellate counsel in his post-conviction appeal.  Because the OCCA concluded this Sixth Amendment claim had no merit, the Court's review of this claim would "ordinarily ... be limited to determining whether [Petitioner] can show that the state court's disposition is 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)(quoting 28 U.S.C. § 2254(d)(1)) .  "However, this deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." Id.  Although the OCCA recited the proper standard for evaluating a claim of ineffective assistance of appellate counsel, see id. at 1202 (holding "proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in Strickland v. Washington, 366 U.S. 668 [1984]"), the OCCA also recited a standard that has been disavowed as "wrong, as a matter of federal law...." Cargle, 317 F.3d at 1204-1205.  In rejecting Petitioner's claim, the

OCCA did not address the merits of the underlying claim of ineffective assistance of trial counsel urged by Petitioner to support his claim of ineffective assistance of appellate counsel. Rather, the OCCA stated "[t]he fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance, or to preclude enforcement of a procedural default." Response, Ex. 5.  Because the OCCA's analysis of Petitioner's claim of ineffective assistance of appellate counsel "deviated from the controlling federal standard ... it is not entitled to deference." Id. at 1205.  Thus, the OCCA's decision with respect to this claim will not be reviewed under the deferential AEDPA standard.  See McGee v. Higgins, 568 F.3d 832, 838-839 (10th Cir. 2009)(finding OCCA's decision not entitled to AEDPA deference concerning ineffective assistance of appellate counsel claim rejected in habeas petitioner's post-conviction appeal where OCCA cited proper Strickland standard but also quoted improper standard, stating that "[t]he fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance").

III. Jury Instructions

Although Petitioner admits in ground one of the Amended Petition that the jury was instructed on the elements of first degree malice aforethought murder using Oklahoma's model jury instructions, Petitioner contends that the trial court confused the jury by giving unnecessary instructions defining general "criminal intent" and "willful" conduct. Petitioner contends that by instructing the jury "on elements not even required" the trial court diminished the State's burden of proof and denied him a fundamentally fair trial.  Petitioner

9

raised this claim in his direct appeal.  Relying entirely on state law, Petitioner argued that the superfluous instructions given to the jury were so contradictory that the conviction should be reversed.

In analyzing this issue, the OCCA first noted that Petitioner did not object to the instructions given to the jury at his trial.  The OCCA further noted that Oklahoma law prohibited reversal of a conviction based on jury instruction error unless the error "has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Response, Ex. 3, at 5 (quoting Okla. Stat. tit. 20, § 3001.1 (2001)).  The court concluded that although the instructions defining "criminal intent" and "willful" were not necessary the trial court "gave all the standard uniform jury instructions on the elements of the charged offense, the presumption of innocence, and the burden of proof beyond a reasonable doubt," and thus no plain error occurred. Id.

In his second ground for habeas relief, Petitioner contends that the trial court erred by refusing his request for an instruction of the offense of manslaughter.  During Petitioner's trial, Petitioner requested an instruction on the offense of heat-of-passion manslaughter in the first degree and argued that the evidence showed the homicide "took place during a domestic dispute" between Petitioner and the victim. TR 278.  The trial court refused to give a manslaughter instruction to the jury because of lack of evidence to support the elements of heat of passion or adequate provocation.  TR 278-279.  In his direct appeal, Petitioner asserted that the trial court erred by failing to instruct the jury concerning the offense of heat-of-passion manslaughter in the first degree.  The OCCA rejected this claim based on its

10

finding that the trial "record is devoid of any evidence suggesting the killing of [the victim] was preceded by any wrongful conduct by her amounting to adequate provocation." Consequently, the court concluded the trial court's refusal to give a manslaughter instruction was not an abuse of the court's discretion.  Response, Ex. 3, at 5-6.

In ground three, Petitioner asserts that the trial court erred by giving an instruction to the jury on flight because there was no evidence admitted at trial to "meet the requirements ... necessary to give the instruction." Amended Petition, at 4.  Alternatively, Petitioner asserts that the trial court erred by omitting a portion of Oklahoma's standard instruction on the issue of flight. The jury was instructed in Petitioner's trial that it could consider Petitioner's "departure shortly after the alleged crime was committed" as circumstantial evidence in determining the issue of his guilt only if the jury found that Petitioner departed with consciousness of his guilt and in order to avoid arrest for the homicide offense. OR 171.

In his direct appeal, Petitioner raised the same claim of error. With respect to the alleged alteration of the standard flight instruction, Petitioner pointed out that the jury instruction left out a portion of Oklahoma's model jury instruction on the issue of flight, Oklahoma Uniform Jury Instructions ("OUJI") 09-08, which states, "The defendant has offered evidence explaining his acts.  You must consider the claim of the defendant in determining if flight occurred." Response, Ex. 1, at 16.  Petitioner further alleged in his direct appeal that the trial court erred in giving an instruction on the issue of flight because no evidence supported the instruction.

The OCCA rejected these claims, finding that the first argument "ignore[d] defense

counsel's attempts through cross-examination to controvert the issue of flight and offer innocent explanations for [Petitioner's] departure.  This tactic is not materially different from evidence explaining flight introduced at trial through the [Petitioner's] statements to third parties."  Response, Ex. 3, at 6.  The OCCA noted that the omitted portion of Oklahoma's model flight instruction "would only have called attention to [Petitioner's] failure to personally explain why he left town on the day of his wife's murder, leaving his children with relatives, disappearing for almost ten months, and giving a false name at the time of his arrest.  If anything, the omission benefitted the [Petitioner]." Response, Ex. 3, at 7.  Thus, the court found no plain error with respect to the alleged jury instruction error.

In ground four of the Amended Petition, Petitioner asserts that the trial court erred in refusing to instruct the jury on the issue of eyewitness identification.  Petitioner asserted in his direct appeal that the trial court's failure to give an instruction on the jury's cautionary use of eyewitness identification, in light of prosecution witness Pryor's inability to identify Petitioner as the individual she saw leaving the victim's apartment during her 911 call to the operator, violated Petitioner's due process right to a fair trial under the Fourteenth Amendment and Article II, section 7 of Oklahoma's Constitution. Response, Ex. 1, at 18-20. The OCCA found that at Petitioner's trial "[a]lthough the State called only one eyewitness to establish that [Petitioner] left the apartment right after shots were fired, the parties ultimately proved that a second witness also identified [Petitioner] as the man leaving the apartment shortly after the shootings." Response, Ex. 3, at 7-8.  The court concluded that the failure to give a cautionary eyewitness identification instruction did not, under the standard

established in <u>Cunnigan v. State</u>, 747 P.2d 328 (Okla. Crim. App. 1987), for reviewing such claims and in the absence of a request for a cautionary eyewitness instruction, result in a substantial violation of Petitioner's rights.

In his sixth ground, Petitioner complains that his constitutional rights were violated due to the trial court's failure to instruct the jury concerning Oklahoma's law requiring certain felons to serve 85 % of their sentences prior to becoming eligible for parole. <u>See</u> Okla. Stat. tit. 21, § 13.1.  In his direct appeal, Petitioner requested that the OCCA modify his sentence to a term of life imprisonment with the possibility of parole as a result of this error.  In its decision in Petitioner's appeal, the OCCA recognized that it had previously held in a similar case, <u>Anderson v. State</u>, 130 P.3d 273 (2006), that juries should be instructed concerning the statutory limitation on parole eligibility.  However, in <u>Anderson</u>, the court noted that its decision did not amount to a substantive change in the law and that "[a] trial court's failure to instruct on the 85 % Rule in cases before this decision will not be grounds for reversal." <u>Id.</u> at 283.  Because Petitioner's trial occurred prior to the OCCA's decision in <u>Anderson</u>, the OCCA found its review was limited "to '[a determination of] whether the error resulted in a miscarriage of justice or constitute[d] a substantial violation of a constitutional or statutory right.'" Response, Ex. 3, at 9 (quoting <u>Carter v. State</u>, 147 P.3d 243 (Okla. Crim. App. 2006)).  The court concluded that, considering the alleged trial errors which it deemed "minor" and the absence of the "85 % instruction," no miscarriage of justice requiring reversal or modification had occurred in connection with Petitioner's conviction and sentence.

13

The Supreme Court has stated on many occasions that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, federal laws, or treaties. *E.g.*, Mabry v. Johnson, 467 U.S. 504, 507 (1984); Pulley v. Harris, 465 U.S. 37, 41 (1984); Smith v. Phillips, 455 U.S. 209, 221 (1982). Thus, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle v. McQuire, 502 U.S. 62, 67-68 (1991). The fact that challenged jury instructions may have been incorrect under state law or deficient in comparison to model instructions used in state courts does not warrant habeas relief. Id. at 71-72. A habeas petitioner challenging jury instructions based on state statutes has an "especially heavy" burden to show "both that the instruction was ambiguous and that there was 'a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.'" Waddington v. Sarausad, __ U.S. __, 129 S.Ct. 823, 831-832 (2009)(quoting Estelle, 502 U.S. at 72). Jury instructions reviewed in a habeas proceeding are not "'judged in artificial isolation,'" but are "'considered in the context of the instructions as a whole and the trial record,'" and "the pertinent question is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Id. at 832(quoting Estelle, 502 U.S. at 72). See Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.)("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."), cert. denied, 514 U.S. 1115 (1995).

14

Petitioner has not provided clear and convincing evidence sufficient to overcome the presumption of correctness attached to the OCCA's factual findings with regard to the evidence admitted at his trial and the sufficiency under state law of the jury instructions given at his trial. The OCCA recognized in its decision in Petitioner's appeal that the jury was adequately instructed under state law on the elements of the malice-aforethought first-degree murder charge, and that the trial court's instructions which unnecessarily defined "criminal intent" and "willful" conduct did not warrant reversal because the instructions did not adversely affect "the foundation of the case" or "any right essential to [Petitioner's] defense." Response, Ex. 3, at 5. The OCCA's decision reflects that the OCCA reviewed the challenged jury instructions in light of the instructions given the jury as a whole and then implicitly determined the superfluous instructions were not reasonably likely to have been applied by the jury in a manner that relieved the State of its burden of proving each element of the offense beyond a reasonable doubt. Petitioner has not demonstrated that this determination was contrary to or unreasonably applied governing Supreme Court precedent.

With respect to the absence of a lesser-included offense instruction, the Supreme Court has not held that the Constitution requires the giving of a lesser-included offense instruction in a non-capital trial. See Lujan v. Tansy, 2 F.3d 1031, 1036 (10th Cir. 1993)(holding "a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense"). The OCCA's finding that no evidence was presented at trial showing victim provocation, a necessary element of

15

the heat-of-passion manslaughter offense in Oklahoma, is well supported by the record. Oklahoma has not, as Petitioner suggests, mandated the giving of a lesser-included offense instruction in all homicide cases. See Shrum v. State, 991 P.2d 1032, 1034-1037 (Okla. Crim. App. 1999)(trial court should instruct jury on any lesser offense that is reasonably supported by the evidence, so long as defendant is not unfairly surprised by the lesser-included offense theory).   See also McHam v. State, 126 P.3d 662, 667-668 (Okla. Crim. App. 2005)(reiterating rule established in Shrum concerning lesser-included offense instructions); Childress v. State, 1 P.3d 1006, 1011 (Okla. Crim. App. 2000)("A trial court is required to instruct on all lesser included or lesser related offenses warranted by the evidence.")(citing, e.g., Shrum, supra).   In this circuit, courts follow an "automatic non-reviewability" rule "for claims based on a state court's failure in a non-capital case, to give a lesser included offense instruction." Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).  Consequently, Petitioner is not entitled to habeas relief concerning the alleged failure of the trial court to give lesser-included offense instructions at his trial.

The flight instruction given at Petitioner's trial advised the jury that it could consider Petitioner's flight along with all of the other evidence introduced at trial in determining Petitioner's guilt so long as it found beyond a reasonable doubt that Petitioner had departed with consciousness of guilt and in order to avoid arrest for the offense.  The instruction did not create a presumption of guilt in connection with the evidence of flight, and Petitioner's trial was not rendered fundamentally unfair as a result of the flight instruction. See Robinson v. Gibson, 35 Fed. Appx. 715 (10th Cir. 2002)(unpublished op.)(flight instruction did not

deprive habeas petitioner of due process or fair trial where instruction did not require jury to presume defendant was at crime scene and had fled but only allowed jury to consider evidence of flight as circumstantial evidence of guilt if they found beyond a reasonable doubt that petitioner had fled with consciousness of guilt and in order to avoid arrest), cert. denied, 537 U.S. 1148 (2003).

Regarding the absence of a cautionary eyewitness instruction, the jury was instructed at Petitioner's trial concerning its responsibility to judge the credibility of witnesses, including consideration of the witness's ability "to remember and relate past occurrences, the means of observation, and the opportunity of knowing the matters about which the witness has testified." OR 176.  Moreover, although witness Pryor identified Petitioner at trial as the individual she saw leaving the victim's apartment after she heard gunshots from the apartment, Petitioner's defense counsel cross-examined the witness concerning her inability to identify Petitioner during the 911 call (TR 94-95), and the prosecution presented other evidence beyond this eyewitness's testimony that linked Petitioner to the homicide.  Under these circumstances, Petitioner's trial was not rendered fundamentally unfair by the absence of a specific instruction on the cautionary use of eyewitness identification.  See Robinson v. Ward, 232 Fed. Appx. 785 (10th Cir. 2007)(unpublished op.)("Considering the witness credibility instruction, defense counsel's ample opportunity to discredit eyewitness testimony through cross-examination, and the fact that the prosecution's case did not rest solely on eyewitness testimony, no additional cautionary instruction regarding eyewitness testimony was necessary.").

As to the failure of the trial court to instruct on Oklahoma's parole eligibility law, the Supreme Court has not held that a habeas petitioner is entitled to instructions on parole eligibility under state law, and the failure to give the "85 % rule" instruction did not render Petitioner's trial fundamentally unfair. See Taylor v. Parker, 276 Fed. Appx. 772 (10th Cir. Apr. 29, 2008)(unpublished op.)(rejecting habeas petitioner's claim that trial court's failure to instruct on parole eligibility in non-capital case rendered his trial so fundamentally unfair as to violate due process); Jones v. Mullin, 175 Fed. Appx. 967 (10th Cir. 2006)(unpublished op.)(same).

The trial record and the presumptively correct factual findings made by the OCCA in Petitioner's direct appeal demonstrate that overwhelming evidence of Petitioner's guilt was presented at his trial.  As the OCCA found in Petitioner's appeal, the jury was instructed concerning the elements of the charged offense under state law and the relevant issues presented at the trial. Consequently, Petitioner has not shown that the alleged instructional errors he has raised in grounds one through four and six of the Amended Petition rendered his jury trial so fundamentally unfair as to constitute a denial of due process, particularly in light of the overwhelming evidence of Petitioner's guilt presented at trial. Petitioner has not demonstrated that the OCCA's resolution of his claims of error in the giving of jury instructions was contrary to or an unreasonable application of clearly-established Supreme Court precedent, and Petitioner is not entitled to habeas relief concerning the issues raised in grounds one through four and six of the Petition.

IV. Admission of Evidence and Prosecutor's Comments

18

In Petitioner's fifth ground for habeas relief, Petitioner asserts that his due process rights were violated by the trial court's admission of "impermissible victim impact evidence and inflammatory prosecutorial comments." Amended Petition, at 5.  In his direct appeal, Petitioner supported this claim by reference to portions of the record, including the prosecutor's comment to the jury that it could consider the victim's children because Petitioner "took the mother from those children.  He took her life, a vibrant, pleasant, beautiful woman that was loved by her family and friends." TR 329.  Petitioner also pointed to the prosecutor's questioning of the victim's mother and the admission into evidence of a photograph of the victim prior to her death.  Finally, Petitioner pointed to the record showing the victim's friend cried while being questioned by the prosecutor concerning the victim's relationship with Petitioner. Response, Ex. 1, at 21.  Petitioner requested that his sentence be reduced to a term of life imprisonment with the possibility of parole due to the improper admission of this victim impact evidence and prosecutorial comments during his trial. Id. at 21-22.

The OCCA found that Petitioner did not object to the challenged evidence or comments, that the photograph of the victim was properly admitted under state evidentiary law, that the remaining evidence challenged by Petitioner did not amount to victim impact evidence admitted in violation of Cooper v. State, 894 P.2d 420 (Okla. Crim. App. 1995), and that no plain error occurred in the admission of evidence or arguments by the prosecutor.

State court evidentiary rulings do not warrant habeas relief unless the ruling rendered the "trial so fundamentally unfair as to constitute a denial of federal constitutional rights."

Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir.), cert. denied, 525 U.S. 950 (1998).

Accord, Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990)(due process claim related to

admission of evidence at state trial will not support habeas relief "absent fundamental

unfairness so as to constitute a denial of due process of law"). In this claim, Petitioner does

not allege that the prosecutor's comments directly affected a specific constitutional right.

Under these circumstances, "[h]abeas relief is available for prosecutorial misconduct only

when the misconduct is so egregious that it renders the entire trial fundamentally unfair."

Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998)(citing Donnelly v. DeChristoforo,

416 U.S. 637, 642-648 (1974)), cert. denied, 526 U.S. 1052 (1999).  This determination is

made "only after considering all of the surrounding circumstances, including the strength of

the state's case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005), cert. denied, 547

U.S. 1181 (2006).   In this case, overwhelming evidence of Petitioner's guilt was presented

at trial, and the OCCA found that the challenged evidence was properly admitted under state

law.  The record also demonstrates Petitioner's counsel was given a full opportunity to cross-

examine the prosecution witnesses. Petitioner has not shown that the admission of evidence

concerning the victim's personal history, character, and relationships or the prosecutor's

comments and questioning of prosecution witnesses rendered Petitioner's trial fundamentally

unfair.  The OCCA's decision in this respect was not unreasonable or contrary to clearly

established Supreme Court precedent, and Petitioner is not entitled to habeas relief

concerning the claim raised in ground five of the Amended Petition.

V. Prosecutorial Misconduct and Trial Errors

In ground seven, Petitioner states in general terms that "[t]rial errors and prosecutorial misconduct, [sic] denied petitioner due process under the federal constitution."  Although Petitioner provides no support for this claim, it is presumed that Petitioner is raising the same claim of trial errors and prosecutorial misconduct he challenged together in Proposition VII in his direct appeal.  In that claim, Petitioner referred to six specific instances of alleged prosecutorial misconduct.  Petitioner alleged that during closing arguments the prosecutor had "improperly vouched for the credibility of [Ms.] Pryor's testimony," "engaged in impermissible burden-shifting" during closing arguments, and "improperly commented on [Petitioner's] lack of remorse" during the trial. Response, Ex. 1, at 25-28.   Petitioner also referred to "hearsay testimony" concerning statements from an individual who did not testify at trial and comments by the prosecutor during closing arguments with respect to this individual's statements. Response, Ex. 1, at 28.   Petitioner alleged that the prosecutor's statements during opening and closing arguments "impermissibly elicited societal alarm" that warranted relief under previous OCCA precedent and "improperly attempted to input bad acts" into the trial by commenting on Petitioner's conduct toward his children and on his previous status as a former jail detainee. Response, Ex. 1, at 28-30.

The OCCA found that these claims of error were "minor" and did not result in a miscarriage of justice warranting reversal of the conviction or modification of Petitioner's sentence.  Response, Ex. 3, at 9.  In view of the overwhelming evidence of Petitioner's guilt presented at his trial and the trial record showing that Petitioner's defense counsel first interjected the alleged "hearsay testimony" of the non-testifying witness into the trial (TR

199, 202), none of the allegations of prosecutorial misconduct rendered Petitioner's trial fundamentally unfair.  Petitioner has not shown that the OCCA's rejection of this claim was contrary to or unreasonably applied clearly established Supreme court jurisprudence. Petitioner is not entitled to habeas relief concerning this claim.

## VI.  Ineffective Assistance of Appellate Counsel

In his eighth and final ground for habeas relief set forth in his Amended Petition, Petitioner contends that he was denied constitutionally effective assistance of appellate counsel.  As support for this claim, Petitioner asserts that his appellate counsel failed to assert a meritorious claim of ineffective assistance of trial counsel based on Petitioner's defense counsel's (1) failure to challenge unnecessary jury instructions defining criminal intent and willful conduct, (2) failure to submit a jury instruction on the jury's cautionary use of eyewitness identification, (3) failure to challenge the jury instruction on the issue of flight, (4) failure to challenge the admission of "impermissible victim impact evidence and inflammatory prosecutorial comment," (5) failure to seek disqualification of individual prospective jurors for cause, (6) comment to the jury that he had asked Petitioner if he wanted to testify but he declined, and (7) failure to request a jury instruction on Oklahoma law governing parole eligibility for violent offenders.[2]

---

[2]Petitioner also asserts that he "is entitled to appellate rule 3.11 remand for an evidentiary hearing to develop factual basis for his ineffective trial counsel claim."  As this request for an evidentiary hearing is directed to the OCCA and its procedural rule governing evidentiary hearings in direct appeals, the undersigned finds this inadvertent inclusion of Petitioner's argument directed toward the OCCA does not invoke or warrant federal habeas review.

To establish Petitioner is entitled to habeas relief concerning his allegation of ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test established in Strickland, supra; that is, he must show that his attorney's representation fell below an objective standard of reasonableness and that counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687. "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.  Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).  "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir.), cert. denied, 525 U.S. 950 (1998). If an issue that appellate counsel failed to raise has merit, the court must

23

determine whether counsel's failure to raise the issue was deficient and prejudicial. <u>Hawkins</u>, 185 F.3d at 1152.

"If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance...." <u>Cargle</u>, 317 F.3d at 1202.  If the omitted issue "has merit but is not so compelling ... [the court must assess] ... the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." <u>Id.</u>  <u>See</u> <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

Petitioner's appellate counsel raised in his direct appeal the underlying issues concerning the adequacy of the jury instructions, the admission of evidence, and prosecutorial misconduct that Petitioner contends demonstrate a meritorious claim of ineffective assistance of trial counsel.  The OCCA reviewed and rejected these jury instruction and evidentiary challenges and instances of alleged prosecutorial misconduct, and Petitioner has failed to demonstrate that the OCCA's decision was contrary to or unreasonably applied governing Supreme Court precedent with respect to these same underlying claims.  Consequently, Petitioner has not shown that his appellate counsel's conduct was outside the range of reasonable professional conduct or that he was prejudiced as a result of his appellate counsel's failure to assert an independent claim of ineffective

assistance of trial counsel based on the same underlying claims.

Two of Petitioner's underlying claims of ineffective assistance of trial counsel, in which he asserts that his defense counsel's performance was deficient because he did not challenge certain prospective jurors for cause and he informed the jury Petitioner had decided not to testify at trial, are not supported by any reasoned argument or references to the record. Petitioner merely states his conclusions, and his reply brief does not expand upon these allegations. The record does not indicate that Petitioner's defense counsel commented in open court before the jury concerning Petitioner's decision not to testify in his defense. Therefore, Petitioner has not shown that his defense counsel provided constitutionally deficient assistance under the circumstances present at the time of the trial. Additionally, Petitioner has provided no foundation for his allegation that his defense counsel should have challenged certain prospective jurors for cause. Thus, Petitioner has not demonstrated that his defense counsel's conduct in this respect was unreasonable under the circumstances present at the time of the trial.

Because Petitioner failed to demonstrate that his defense counsel's performance was constitutionally deficient, Petitioner has not demonstrated that his appellate counsel provided constitutionally deficient assistance in failing to raise a claim of ineffective assistance of trial counsel in Petitioner's direct appeal based on these same underlying claims. Consequently, Petitioner is not entitled to habeas relief concerning his claim of ineffective assistance of appellate counsel raised in ground eight of the Amended Petition.

<u>RECOMMENDATION</u>

25

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by ___September 8th___ , 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___18th___ day of ___August___, 2009.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE